SLIP OPINION

Cite as 2016 Ark. 393

# SUPREME COURT OF ARKANSAS

No. CR–15–521

| | |
|---|---|
| GREGORY AARON KINSEY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** November 17, 2016<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FT. SMITH  DISTRICT<br>[NO. CR–2013-664]<br><br>HONORABLE STEPHEN TABOR, JUDGE<br><br>AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On November 24, 2014, appellant, Gregory Aaron Kinsey, was convicted by a Sebastian County Circuit Court jury of one count of first–degree murder and one count of second–degree murder.  Kinsey was sentenced to forty years and thirty years, respectively, to be served consecutively. Kinsey timely appealed and presents three points on appeal: (1) the circuit court erred in denying Kinsey's motion for a directed verdict because the State failed to negate his defense of justification; (2) the circuit court erred in refusing to instruct the jury as to the appropriate burden of proof on the defense of justification; and (3) the circuit court erred in finding that Kinsey opened the door to questions regarding Kinsey's past behavior.

## I. *Facts*

On July 1, 2013, Kinsey was charged with two counts of capital murder in the June 26, 2013, deaths of Brandon Prince and Nathan Young.  At trial, Nathan Maynard testified

that he lived next door to Prince and across the street from Young in Fort Smith. Maynard testified that at around 9:00 p.m., Young knocked on his door and asked him if he wanted to come outside and drink a beer. Prince joined them on the porch. Maynard testified that at approximately 9:30 p.m., the three men noticed Kinsey squatting down in the alley adjacent to Young's house and was looking through Young's fence. Maynard further testified that Prince and Young approached Kinsey and Young asked Kinsey what he was doing. Maynard testified that Kinsey was carrying grocery bags, which Kinsey threw down, and told the men that he was "satan." Maynard testified that Kinsey then proceeded to pull out a machete. Maynard testified that he stepped off the porch and put down his beer, and that when he looked up he witnessed Kinsey strike Prince with the machete. He further testified that Kinsey then began striking Young with the machete. Maynard testified that Prince tried to run but only made it to the porch where he fell. When Young attempted to run, Kinsey chased him, struck him and continued striking Young with the machete while Young was on the ground. Maynard further testified that he grabbed a piece of wood, a two-by-four-inch board, and hit Kinsey with it. Maynard testified that after hitting Kinsey with the board, he threw the wood at Kinsey and fled.

Cole Prince, Prince's sixteen-year-old son, fifteen years old at the time of the crimes, also testified. Prince testified that he was visiting for Father's Day, heard his father's screams from outside, went outside to help his father and saw Kinsey. Prince testified that he took his two-year-old brother next door, grabbed a towel, and tried to stop his father's bleeding. Prince further testified that he saw Kinsey as soon as he opened the door, Kinsey was kneeling

2

to pick up his bags and Prince heard Kinsey say "I shouldn't have done this."

At trial, a recorded statement given by Kinsey to law enforcement on the night of the murders was played for the jury. In the statement, Kinsey told the police that he had been to the Dollar General Store to buy toilet paper, tea, and sodas and that he was walking through the alleys on his way back home when he thought he saw a man who used to date and "have violent altercations" with his mother. Kinsey stated that he thought it was important to confirm whether it was the same man so he could alert his mother if the man was back in Ft. Smith. Kinsey further stated that he did not want to be seen while he was looking into the yard and that a man across the street from where he was standing called out to him and asked him what he was doing. Kinsey said that the man thought he was possibly urinating on his house and further stated that "[i]t was clear that they wanted to start an altercation." According to Kinsey, he became angry, tossed down his grocery bags, and told the men that "I don't want to go to prison today." Kinsey stated that he spoke louder because "I'm too quiet for most people to hear." Kinsey stated that when the man asked him why he was creeping around he became angry, tossed the bags down, yelled at the man, "I don't want to go to prison today," and then stated

> I can't remember much of what happened. I remember he and the other guy, they started coming real close to me. I just told them, please, man, I just want to go home. Don't make this happen.

Kinsey further stated "I started picking up my groceries to walk off. He told me, I know you're trying to sound like Satan to scare me, but I'm not afraid of you. He and the other guy got real close to me. I pulled out the machete because I thought I would scare

them off." According to Kinsey, one of the men said that he was not afraid of the knife. He said that the men "started hemming me in," and got close enough that "I felt their breath on me," and that Kinsey "started swinging" the machete. Kinsey remembered that he cut one of the men's arms with the first swing and stated:

> I remember cutting him. I remember cutting the other boy who was by me. . . . . All I remember seeing is the blood fly and him turn over and move off from me. So I concentrate on the little guy, the short one, the one who did most of the talking. I remember he tried to flee, but I don't think I registered it at the time. I pursued him. I kept cutting. I wasn't trying to kill him. I wasn't trying to incapacitate him. It's just once I started swinging, I just kept swinging. At one point, he went to the ground, his hands over the back of his neck like he went into a submissive position. That's when I first really came to, consciously again. I remember him looking at me and saying, I give up, you win. I remember the watery gurgle in his voice made me think I might have hit his throat. I – – – that's when I decided I should stop. Before then, there was no thought of stopping because I wasn't thinking. I was just doing.
>
> . . .
>
> I guess in the end, there's no justifying. Of course, I can say it was self defense. I felt they were going to jump me, but ultimately I swung first. I used a machete. It just occurred to me while sitting in the waiting room twenty minutes ago that I could have left after I cut them the first couple of times because they were running. But it was just – – – it was instinct.

Kinsey also stated that he could have left the men, but he pursued them. Finally, Kinsey stated that a third man, who was standing by the porch, hit him with a two- by-four-inch board during the fight — "it just bounced off and I ignored him."

Dr. Daniel Dye, the medical examiner, testified that Prince had been struck once and that the "chop wound" cut through the artery, which was "rapidly fatal." Dye further testified that Young was essentially hacked to death. Young sustained between eight and eleven blows, and the cause of death was multiple chop wounds. The jury convicted Kinsey

SLIP OPINION

as set forth above and this appeal followed.

## II. *Points on Appeal*

### A. Sufficiency of the Evidence

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Whitt v. State*, 365 Ark. 580, 232 S.W.3d 459 (2006). In reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). This court will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Finally, the credibility of witnesses is an issue for the jury. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

With these standards in mind, we turn to Kinsey's first point on appeal. Kinsey's challenge to the sufficiency of the evidence supporting his convictions contends that the State failed to negate his defense of justification. Kinsey asserts that the State failed entirely to address his claim of self-defense: "The State did not offer any evidence disproving that Prince and Young were the aggressors." Kinsey also contends that any evidence that the State did present was not of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. The State responds that Kinsey's argument is not preserved for review, but further argues that Kinsey's convictions are

SLIP OPINION

supported by substantial evidence.

Prior to reaching the merits of Kinsey's first point on appeal, we must address the State's position that Kinsey failed to preserve the issue for review because Kinsey failed to address any specific deficiencies of State's proof in his motion below. The applicable statute is Ark. Code Ann. § 5-2-607, "Use of deadly physical force in defense of a person," which provides:

(a) A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is:

(1) Committing or about to commit a felony involving force or violence;

(2) Using or about to use unlawful deadly physical force; or

(3) Imminently endangering the person's life or imminently about to victimize the person as described in § 9-15-103 from the continuation of a pattern of domestic abuse.

(b) A person may not use deadly physical force in self-defense if the person knows that he or she can avoid the necessity of using deadly physical force:

(1)(A) By retreating.

(B) However, a person is not required to retreat if the person is:

(i) Unable to retreat with complete safety;

(ii) In the person's dwelling or on the curtilage surrounding the person's dwelling and was not the original aggressor; or

(iii) A law enforcement officer or a person assisting at the direction of a law enforcement officer; or

(2) With complete safety by surrendering possession of property to a person claiming a lawful right to possession of the property.

(c) As used in this section:

(1) "Curtilage" means the land adjoining a dwelling that is convenient for residential purposes and habitually used for residential purposes, but not necessarily enclosed, and includes an outbuilding that is directly and intimately connected with the dwelling and in close proximity to the dwelling; and

(2) "Domestic abuse"means:

(A) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members; or (B) Any sexual conduct between family or household members, whether minors or adults, that constitutes a crime under the laws of this state.

At issue are Kinsey's motions for directed verdict regarding self-defense. At the close of the State's case, Kinsey moved for a directed verdict regarding capital murder, first-degree murder, and second-degree murder. With regard to self-defense, the entirety of Kinsey's motion for direct verdict on that issue was as follows:

> Also with regard to self-defense, the State has not disproven that. And so we would ask the court to enter a directed verdict on each of those.

After the defense rested, Kinsey renewed his motion for directed verdict and made the following motion with regard to self-defense:

> And also, the State has failed to negate self defense, and he should be acquitted of everything.

Rule 33.1 of our Rules of Criminal Procedure provides "In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor." Ark. R. Crim. P. 33.1 (2015). Further, in interpreting this rule, we have been steadfast in our holdings that in order to preserve an issue for review, we will not address the merits of an appellant's insufficiency argument where the directed-verdict

motion is not specific. *Gillard v. State*, 372 Ark. 98, 101, 270 S.W.3d 836, 838–39 (2008).

Further, in *Riley v. State*, 2012 Ark. 462, at 2–3, we held that Riley had failed to preserve an issue for review and explained the specificity required for preservation:

> We have held that, while objections do not need to cite specific rules to be sufficient, an objection must be specific in that it is sufficient to apprise the court of the particular error alleged. *See Gordon v. State*, 2012 Ark. 398. A careful review of the instant record reveals that Riley failed to apprise the circuit court of the particular argument he now raises on appeal, and he failed to obtain a ruling on it. While Riley did cite the circuit court to our decision in *State v. Sypult*, 304 Ark. 5, 800 S.W.2d 402 (1990), and Rule 503, he did so solely for the proposition that his waiver of the psychotherapist–patient privilege was required. Riley in no way apprised the circuit court of the conflict between our rule and the statute that he now asserts, nor did he in any way apprise the circuit court of the relevant holding in Sypult regarding conflicts between legislation and our rules. A party cannot enlarge or change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *See Gulley v. State*, 2012 Ark. 368, . . . *Dixon v. State*, 2011 Ark. 450, 385 S.W.3d 164. Moreover, an argument is not preserved for appellate review unless the circuit court rules on the specific objection raised by the appellant. *See Gulley*, *supra*. Riley cited the circuit court to a case for a proposition different than that asserted on appeal, and we cannot say that the mere citation of that case preserves for appeal any and every legal argument based thereon, even if not articulated to the circuit court. Because Riley neither apprised the circuit court of his particular conflict argument, nor obtained a ruling on that particular argument, this court is precluded from addressing it.

*See also Brown v. State*, 374 Ark. 324, 327, 287 S.W.3d 587, 589 (2008) ("The rationale behind this rule is that 'when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof. *Pinell v. State*, 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005)"); *Winkle v. State*, 374 Ark. 128, 132, 286 S.W.3d 147, 150 (2008) ("[A] defendant must make a timely, specific objection, stating that ground, as a general objection is not sufficient to preserve a specific point. *See Stone v. State*, 371 Ark. 78, 82, 263 S.W.3d 553, 555 (2007) (quoting *Howard v. State*, 348 Ark. 471, 493, 79 S.W.3d 273, 286 (2002)").

The State asserts that Kinsey did not preserve the issue for review because he did not identify the specific elements he alleged were lacking to the circuit court to preserve the issue for this court's review; rather, Kinsey made only a general motion. Here, based on the record before us, Kinsey generally argued that the State failed to negate self-defense, but in his directed-verdict motion, Kinsey failed to identify specifically how the State's proof was insufficient to meet its burden — e.g., whether the State failed to show that Kinsey lacked a reasonable belief that the victims were about to use deadly force; whether the State failed to demonstrate that Kinsey could not have retreated safely; or whether the State failed to demonstrate that the victims were not committing, or were about to commit, a felony involving force or violence. Accordingly, Kinsey did not identify the specific elements to the circuit court that he now claims the State did not meet and therefore did not preserve the issue for review. Thus, we do not reach the merits on this point and affirm the circuit court.

## B. Jury Instruction

For his second point on appeal, Kinsey contends that it was error for the circuit court to not give his proffered modified jury instruction on the defense of justification. Kinsey asserts that the model instruction incorrectly stated that Kinsey had the burden of raising reasonable doubt as to whether he acted in self-defense. Kinsey asserts that this language incorrectly allocated the burden to the defendant, violates a fundamental right, and the presumption of innocence.

A trial court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

In this case, the circuit court gave the model jury instruction, AMI–Crim. 2d 705, and the jury was instructed as follows:

> Ladies and gentleman, the State must prove beyond a reasonable doubt each element of the offense charged. On the other hand, the defendant, is not required to prove his innocence.
>
> . . .
>
> Gregory Aaron Kinsey asserts as a defense to this charge of capital murder that deadly physical force was necessary to defend himself. This is a defense only if, first, Gregory Aaron Kinsey reasonably believed that [Brandon Prince] [Nathan Young] was about to commit battery with force or violence, and second that Gregory Aaron Kinsey only used such force as he reasonably believed necessary. A person is not justified in using deadly physical force if he knows that the use of deadly physical force can be avoided with complete safety by retreating.
>
> Gregory Aaron Kinsey, in asserting this defense, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to his guilt of capital murder, then you must find him not guilty of that offense.

Kinsey's proffered, modified instruction substituted the last paragraph with the following language:

> The State must prove beyond a reasonable doubt that this defense does not exist. If you have a reasonable doubt as to whether this defense exists, you must find the defendant not guilty.

Here, in reviewing Kinsey's argument, in *Cluck v. State*, 365 Ark. 166, 179, 226 S.W.3d 780, 789 (2006) (internal citations omitted), we addressed proffered instructions and explained that "'it is not error for a court to refuse to give a non-model instruction when a model instruction accurately reflects the law." "Non-model jury instructions are to be given only when the circuit court finds that the model instructions do not accurately state the law or do not contain a necessary instruction on the subject at hand. *Strain v. State*, 2012 Ark. 184,

at 5, 423 S.W.3d 1.” *Fincham v. State*, 2013 Ark. 204, at 12, 427 S.W.3d 643, 651; *Cavin v. State*, 313 Ark. 238, 855 S.W.2d 285 (1993). Further, we have explained that there is a “presumption that the model instruction is a correct statement of the law. As such, any party who wishes to challenge the accuracy of a model instruction, be it the State or a defendant, must rebut the presumption of correctness.” *Thomas v. State*, 370 Ark. 70, 84, 257 S.W.3d 92, 103 (2007).

In *Anderson v. State*, 353 Ark. 384, 404, 108 S.W.3d 592, 605 (2003), this court addressed AMI–Crim. 2d 705 and the justification of self-defense stating:

> We begin our analysis of this issue by reviewing the burden of proof for both the defendant and the State where the justification of self-defense is raised in a criminal case. The defendant’s burden of proof was clearly stated in *Doles v. State*, 275 Ark. 448, 631 S.W.2d 281 (1982): “Justification is not an affirmative defense which must be pled, but becomes a defense when any evidence tending to support its existence is offered to support it.” *Id*. at 450, 631 S.W.2d at 282 (emphasis added). It does not matter whether the evidence of self-defense comes from the defense’s case or the prosecution’s case. *Peals v. State*, 266 Ark. 410, 584 S.W.2d 1 (1979). According to the Arkansas Model Jury Instructions-Criminal, the defendant’s burden of proof is merely to raise a reasonable doubt. AMI Crim. 2d 705. The State’s burden of proof is equally clear: “Because justification is not an affirmative defense, the State has the burden of negating the defense once it is put in issue.” *Humphrey v. State*, 332 Ark. 398, 408, 966 S.W.2d 213, 218 (1998). By statute, a justification, such as self-defense, is considered an element of the offense, and once raised, must be disproved by the prosecution beyond a reasonable doubt. Ark. Code Ann. § 5-1-102(5)(C) (Supp. 2001); *see also* Comment to AMI Crim. 2d 705 (“[T]he prosecution has the burden to prove as an element of its case the negation of any defense beyond a reasonable doubt.”).

Here, Kinsey asserts that the language in the instruction leads the jury to believe that the defense has the burden to show the existence of the defense or to raise reasonable doubt because the instruction instructs the jurors to determine whether: “this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt.” However, we disagree

with Kinsey. The model instruction was a complete instruction of the law:

> Gregory Aaron Kinsey, in asserting this defense, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to his guilt of capital murder, then you must find him not guilty of that offense.

On the other hand, the proffered instruction was not a complete instruction of the law because it presumes that justification is an element of the offense when that is a question for the jury.[1] In other words, Kinsey's proffered instruction failed to state "Gregory Aaron Kinsey, in asserting this defense, is required only to raise a reasonable doubt in your minds." Based on our discussion above, the instruction was a complete statement of the law. Thus, we hold that the circuit court did not err and affirm the circuit court.

## C. Kinsey's Past Behavior

For his final point, Kinsey asserts that the trial court erred during the sentencing phase

---

[1]Although the dissent states:

> "[b]y statute, a justification, such as self-defense, *is considered an element of the offense*, and once raised, must be disproved by the prosecution beyond a reasonable doubt." *Anderson*, 353 Ark. at 404, 108 S.W.3d at 604 (citing Ark. Code Ann. § 5-1-102(5)(C) (Supp. 2001)) (emphasis added). AMI Crim. 2d 705 relieves the State of the responsibility to prove beyond a reasonable doubt every element of the offense and is therefore an incomplete statement of the law.

The State is not relieved of any burden by AMI Crim. 2d 705. The dissent's position is a misunderstanding of Kinsey's responsibility under the law. The issue is one of fact and for the jury to decide whether the issue was raised. *Walker v. State*, 248 Ark. 421, 422, 451 S.W.2d 727, 728 (1970) ("The issue of self-defense was a fact question for the jury.); *Humphrey v. State*, 332 Ark. 398, 409, 966 S.W.2d 213, 219 (1998) ("The defense of justification is a matter of intent and a question of fact for the jury. *Johninson v. State*, 317 Ark. 431, 878 S.W.2d 727 (1994)").

when it permitted questions regarding Kinsey's past behavior.

"The trial court has wide discretion in admitting evidence, and its discretion will not be reversed without an abuse of discretion. *Hill v. State*, 318 Ark. 408, 415, 887 S.W.2d 275, 278 (1994). Arkansas Code Annotated section 16-97-103(5) and (6) (Repl. 2006), provides that relevant character evidence and aggravating and mitigating circumstances considered inadmissible during the guilt phase of a criminal trial may be admissible during the sentencing phase. *Crawford v. State*, 362 Ark. 301, 306, 208 S.W.3d 146, 149 (2005). Evidence of uncharged criminal conduct can be admissible at the penalty phase of a trial if it is relevant evidence of the defendant's character or as evidence of an aggravating circumstance. *Brown v. State*, 2010 Ark. 420, 378 S.W.3d 66." *Huff v. State*, 2012 Ark. 388, at 7, 423 S.W.3d 608, 612. Further, "the admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." *Pickens v. State*, 347 Ark. 904, 910, 69 S.W.3d 10, 14 (2002).

Here, during the sentencing phase, Kinsey's great aunt, Linda Perkins, testified in support of Kinsey. Perkins testified regarding a 2013 incident when she took Kinsey to Walmart and Golden Corral for his birthday. Perkins testified that while in line at the restaurant, some boys looked at Kinsey and began laughing at Kinsey's appearance and making fun of Kinsey. The following exchange then occurred:

DEFENSE COUNSEL: Well, did you at any time see him become aggressive toward anyone?

WITNESS: No, never. When he was a child, he was a very, very happy child and laughed and talked and went on with the

other kids, to, you know, I didn't think anything of it at the time.

DEFENSE COUNSEL:     I'm talking about this one specific incident.

WITNESS:     Oh, okay. At the restaurant?

DEFENSE COUNSEL:     At the Golden Corral or the Walmart where you went to buy clothes. You didn't see anything like that out of him?

WITNESS:     No. No. Nothing.

Prior to the State's cross-examination of Perkins, the following conference at the bench occurred:

PROSECUTOR:     Judge, this witness testified that the defendant was kind and non-aggressive and the State believes that she has opened the door that I can ask her did she know or was she aware of when he attacked one brother with a machete and punched the other brother. She's opened the door so that by testifying about non-aggression.

. . . .

DEFENSE ATTORNEY:     [A]nything about that would be hearsay, and there's not been prosecution.

PROSECUTOR:     I think I'm entitled to ask her –

THE COURT:     She either opened the door or she hasn't. I think she has opened the door. She has offered an opinion about that. Yes, she was non-responsive, but she did offer an opinion. And I think Ms. Ward can ask her, you said that he was this and that. Are you aware of the incident? I suspect she's going to say no and then that's going to be that.

DEFENSE ATTORNEY:     But it plants that seed in the mind. And I'd like to note that earlier in the case, when Mr. Maynard opened the door with something that he said was non-responsive,

you did not allow me to –

THE COURT:        Well, that's an entirely different situation and distinguishable in my mind.

On cross-examination, the State asked Perkins if she was aware that in 2008 Kinsey had punched one of his brothers, cutting his eye. Perkins responded that she was aware of the incident: "Yes. I mean, I didn't mean to say that I had ever seen him be aggressive. He wasn't aggressive that day in any way." The State also asked Perkins about a 2007 incident[2] were Kinsey had attacked another brother, Dillon, with a machete. Perkins responded that she was not aware of the incident.

Here, Kinsey argues that the circuit court erred in allowing the State to elicit the testimony discussed above — "Perkins's response did not open the door to a line of questioning regarding specific circumstances of aggression." Kinsey further asserts that allowing the jury to learn of a previous incident in which Kinsey allegedly wielded a machete and attempted to attack one of his brothers prejudiced Kinsey during sentencing. However, based on the record before us, we do not find error in the circuit court's ruling. Kinsey asked the broad question, "Well, did you at any time see him become aggressive toward anyone?" Perkins responded "No, never," and then testified that Kinsey was a happy child. Although Kinsey may have intended for the question to be more limited in scope and time, the question

---

[2]At a bench conference, the prosecution disclosed that Kinsey's mother had filed a police report stating that Kinsey had tried to attack his brother with a machete and that she had to jump on his back to keep Kinsey from doing it. Kinsey's brother, Dillon, testified that he did not recall the incident and that any police report alleging that the incident occurred would be a lie.

was broadly stated, and Perkins's response demonstrates that she did not believe that the question was limited to the birthday outing. By posing a broad question regarding Kinsey's aggressiveness, Kinsey opened the door to questions regarding specific instances in which Kinsey had displayed aggression. Further, the broad question put Kinsey's character at issue and the testimony was permissible pursuant to Ark. Code Ann. § 16-97-103. "This court has expressly held that under section 16-97-103(5), relevant character evidence is admissible at the penalty phase of a trial even where it was inadmissible in the guilt-innocence phase." *Brown v. State*, 2010 Ark. 420, at 15, 378 S.W.3d 66, 74–75 (internal citations omitted). Based on our discussion above, the circuit court did not err by allowing the testimony, and we affirm the circuit court.

Affirmed.

DANIELSON, J., dissents.

**PAUL E. DANIELSON, Justice, dissenting.** I disagree with the majority's conclusion that AMI Crim. 2d 705 is a complete statement of the law. While the language of AMI Crim. 2d 705 is a correct statement of the law, it is incomplete in that it does not inform the jury of the State's burden of proof—only the burden of the defense. Our case law clearly states that justification is not an affirmative defense and that the prosecution has the burden of negating the defense beyond a reasonable doubt once it has been raised. *See Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003); *Humphrey v. State*, 332 Ark. 398, 966 S.W.2d 213 (1998).

Here, the circuit court determined that there was evidence tending to support the

justification defense and that an instruction on self-defense was necessary. At that point, the burden was on the State to negate the defense beyond a reasonable doubt. *See* Ark. Code Ann. § 5-1-102(5)(C); *Anderson*, 353 Ark. 384, 108 S.W.3d 592; Comment to AMI Crim. 2d 705. In addressing a defendant's right to a correct burden of proof, this court has stated as follows:

> The burden of proof, either the State's or the defendant's, is necessary to preserve a defendant's presumption of innocence and is an issue akin to the right to a jury trial . . . . The defendant is entitled not only to the jury's consideration of the correct burden of proof in jury-room deliberations, but also when the jury is hearing, weighing, and sifting the evidence presented at trial.

*Anderson*, 353 Ark. at 402, 108 S.W.3d at 603.

It is axiomatic that when a jury instruction is erroneous or misleading, it is prejudicial and should not be given to the jury. *See Millsap v. Williams*, 2014 Ark. 469, 449 S.W.3d 291; *Bedell v. Williams*, 2012 Ark. 75, 386 S.W.3d 493; *Allstate Ins. Co. v. Dodson*, 2011 Ark. 19, 376 S.W.3d 414. AMI Crim. 2d 705 informs the jury only of the defendant's burden in raising the justification of self-defense. It places absolutely no burden on the State to negate the defense. As such, the jury has no idea that the State has a burden with regard to the justification defense. This is an incomplete statement of the law as set forth in *Anderson* and misleads and causes confusion for the jury.

The majority states that "the proffered instruction was not a complete instruction of the law because it presumes that justification is an element of the offense when that is a question for the jury." This statement ignores our case law that provides that "[b]y statute, a justification, such as self-defense, *is considered an element of the offense*, and once raised, must

be disproved by the prosecution beyond a reasonable doubt." *Anderson*, 353 Ark. at 404, 108 S.W.3d at 604 (citing Ark. Code Ann. § 5-1-102(5)(C) (Supp. 2001)) (emphasis added). AMI Crim. 2d 705 relieves the State of the responsibility to prove beyond a reasonable doubt every element of the offense and is therefore an incomplete statement of the law.[3]

We presume that the jury follows the instructions they are given. *See Hall v. State*, 315 Ark. 385, 868 S.W.2d 453 (1993). The omission in AMI Crim. 2d 705 of the State's burden to prove every element of the offense is a fundamental error that is so serious as to deprive Kinsey of a fair trial and a reliable finding of guilt. *See Reynolds v. State*, 341 Ark. 387, 18 S.W.3d 331. The circuit court's failure to properly instruct the jury calls into question the validity of the jury's verdict, as it was based on incomplete and confusing instructions. *See Millsap*, 2014 Ark. 469, 449 S.W.3d 291. This clearly constituted an abuse of discretion.

Accordingly, I would refer the matter to the Committee on Model Jury Instructions–Criminal, and I would reverse and remand.

*April Golden* and *Charlotte Aceituno Bogan*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

---

[3]The majority misses the point on this issue. While it is the jury's duty to decide questions of fact, it is the circuit court's duty to provide the jury with a complete statement of the law. The jury relies on the law provided in the jury instructions and applies that law to the facts of the case. The jury simply cannot do its job of deciding factual questions if it is not given a complete statement of the law.