Cite as 2021 Ark. App. 207

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CR–20–431

| | |
|---|---|
| OCTAVIA LASHA JOHNSON<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | OPINION DELIVERED: MAY 5, 2021<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-18-578]<br><br>HONORABLE CHARLES E. CLAWSON, JR., JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Octavia Lasha Johnson was convicted of manslaughter in the Faulkner County Circuit Court and was sentenced to eight years' imprisonment. Relying on her justification defense, she argues on appeal that the circuit court should have directed a not-guilty verdict. We affirm the conviction because her argument is not preserved.

### I. *Applicable Law*

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Kinsey v. State*, 2016 Ark. 393, 503 S.W.3d 772. In reviewing a challenge to the sufficiency of the evidence, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* This court will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Finally,

the credibility of witnesses is an issue for the jury. *Id*. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*.

We recently held that an appellant's directed-verdict argument—that the State failed to prove she did not act in self-defense—lacked specificity to preserve the issue for our review. We stated,

> In order to preserve a challenge to the sufficiency of the evidence in a jury trial, a criminal defendant must move for directed verdict at the close of the evidence offered by the prosecution and at the close of all the evidence. Ark. R. Crim. P. 33.1(a). A motion for directed verdict shall state the specific grounds therefor. *Maxwell v. State*, 373 Ark. 553, 559, 285 S.W.3d 195, 200 (2008). Without a circuit court ruling on a specific motion, there is nothing for this court to review. *Id*. Failure to abide by these procedural rules renders any question of the sufficiency of the evidence waived on appeal. Ark. R. Crim. P. 33.1(c); *Bradley v. State*, 2013 Ark. 58, 426 S.W.3d 363. An appellant must make a specific motion for a directed verdict that advises the circuit court of the exact element of the crime that the State has failed to prove. *Conley v. State*, 2011 Ark. App. 597, 385 S.W.3d 875. Rule 33.1 is strictly construed. *Pratt v. State*, 359 Ark. 16, 194 S.W.3d 183 (2004).

> In *Kinsey v. State*, our supreme court held that the appellant's argument that the State failed to negate his justification defense was not preserved for review because he made only a general motion to the circuit court and did not identify specifically how the State's proof was insufficient to meet its burden. 2016 Ark. 393, 503 S.W.3d 772. The court noted that the specific elements would include "whether the State failed to show that [the appellant] lacked a reasonable belief that the victims were about to use deadly force; whether the State failed to demonstrate that [the appellant] could not have retreated safely; or whether the State failed to demonstrate that the victims were not committing, or were about to commit, a felony involving force or violence." *Id*. at 9, 503 S.W.3d at 778; *see also Woods v. State*, 2018 Ark. App. 256, at 4, 548 S.W.3d 832, 835 (holding that the appellant failed to preserve her sufficiency argument on her justification defense when she made a general motion that she was "defending her sons").

*Boston v. State*, 2020 Ark. App. 551, at 3–4, 613 S.W.3d 764, 766–67.

## II. *Johnson's Directed-Verdict Motions*

Jeremy Smith died on April 29, 2018, after being stabbed with a knife. Johnson was charged with second-degree murder in Smith's death. Several witnesses who were present when Smith was stabbed, responding police officers, and a forensic pathologist testified for the State at Johnson's jury trial on November 4–5, 2019.

At the close of the State's evidence, Johnson moved for a directed verdict as follows:

DEFENSE COUNSEL: Yes. I'd make a motion for directed verdict on murder in the second degree. The State has failed to make a prima facie case that she knowingly caused the death of Jeremy Smith. Two witnesses testified that they didn't see specifically what happened. One of them specifically said that he fell on top of her or fell on the knife. The only evidence that would be remotely close is—I believe it was [Officer] Jetts who says that my client [said], "I did it. I did it. I just wanted him to stop hitting me."

So that in and of itself does not prove that she—it was an accidental. It wasn't justified. The State has failed to make a prima facie case that she knowingly caused the death of him under circumstances manifesting the indifference of the value of human life.

And even with the testimony of Jetts, Jetts stated that her quasi-confession was consistent with defending herself. So the State has failed to make a prima facie case on murder in the second.

The State responded that it had established a prima facie case because one witness testified that Smith said, "She stabbed me, sis." Further, Johnson stated that she did it and that she placed the knife back inside the kitchen, and the knife was recovered from her kitchen. The circuit court denied the motion, stating, "I think there's [a] sufficient amount of evidence, a prima facie case, to get this case to the jury on the issue of murder in the second degree."

3

Johnson and two other witnesses testified for the defense. After the State's rebuttal witness, Johnson renewed her directed-verdict motion as follows:

DEFENSE COUNSEL: So, a motion for directed verdict. The State hadn't made a prima facie case that my client—my client knowingly committed or negligently and recklessly committed—they did make a prima facie case that it was a mere accident at best. And so, I renew my motion from earlier verbatim and include that based upon what has transpired in my case in chief and the rebuttal.

The circuit court denied the motion. After the jury was instructed, it returned a not-guilty verdict on the second-degree-murder charge; however, Johnson was found guilty of manslaughter, a lesser-included offense, and she was sentenced to eight years' imprisonment.

## III. *Justification*

Johnson states that the jury was instructed to find her guilty of manslaughter if the State convinced the jury beyond a reasonable doubt that she recklessly caused Smith's death. *See* Ark. Code Ann. § 5-10-104(a)(3) (Repl. 2013).[1&2] On appeal, she argues that the evidence showed that she reasonably believed that Smith posed an imminent threat of physical violence to her and her unborn child; thus, she was justified in using the force that resulted in Smith's death. *See* Ark. Code Ann. § 5-2-607(a)(3) (Supp. 2019).

---

[1]A person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur. Ark. Code Ann. § 5-2-202(3)(A) (Repl. 2013).

[2]The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. Ark. Code Ann. § 5-2-202(3)(B).

4

Johnson cites *Brown v. Battle Creek Police Department*, 844 F.3d 556, 567 (6th Cir. 2016), which defines an imminent threat as "an immediate, real threat to one's safety that justifies the use of force in self-defense, or the danger resulting from an immediate threatened injury sufficient to cause a reasonable and prudent person to defend herself." She argues that the violence that resulted in Smith's death was a piece of the unending violence to which she was subjected beginning in October 2016 and continuing until the date of his death on April 29, 2018. She relies on the trial testimony describing physical attacks that she endured during her pregnancies and Smith's threat to beat her on the day he died. She contends that the pattern of abuse she suffered is similar to that in *State v. Norman*, which describes a pattern of extreme physical abuse, including forced prostitution. 366 S.E.2d 586 (N.C. Ct. App. 1988), *rev'd*, 378 S.E.2d 8 (N.C. 1989) (ultimately holding that because the victim/decedent was asleep at the time he was shot by the defendant, he did not pose an imminent threat of death or great bodily harm to her). Johnson argues that she is a textbook example of a battered woman who killed her batterer rather than continue to suffer his abuse. She argues that when she used force against Smith, she had an objectively reasonable belief that force was necessary to put an end to his "continuous reign of terror." *See Norman*, 366 S.E.2d at 592.

Nevertheless, as argued by the State, Johnson's argument is not preserved for appellate review. On appeal, Johnson solely focuses on her justification defense, which was not specifically argued in her motions for directed verdict. At the close of the State's case, she argued that the State did not make a prima facie case that she knowingly caused Smith's death, and the circuit court specifically ruled that the motion was denied as to second-degree

5

murder.  While she mentioned the words "justified" and "defending herself," she did not move for directed verdict on the premise that she reasonably believed Smith posed an imminent threat of physical violence to her and her unborn child and that she was justified in using the force that resulted in Smith's death.  A sufficiency challenge at trial regarding a justification defense must be made with specificity in order to preserve it for review.  *Kinsey*, *supra*; *Woods*, *supra*.

When the motion was renewed at the close of all evidence, Johnson's counsel added an assertion that the State had not proved that she "knowingly committed or negligently and recklessly committed" but had shown that "it was a mere accident at best," and then counsel renewed the prior motion verbatim.  Again, there was no specific directed-verdict motion as to a justification defense.  Because Johnson's argument below is different than the argument she raises on appeal, the issue is not preserved for review.  *Perez v. State*, 2020 Ark. App. 367.

The State also contends that any argument regarding the sufficiency of the evidence sustaining the manslaughter conviction is barred.  We agree.  When lesser-included offenses are at stake that involve differing degrees of culpability, a defendant is required to set forth specific elements as to each offense in a directed-verdict motion.  *Jenkins v. State*, 350 Ark. 219, 85 S.W.3d 878 (2002); *Brown v. State*, 2015 Ark. App. 427, 468 S.W.3d 282; *Lofton v. State*, 57 Ark. App. 226, 944 S.W.2d 131 (1997).  In *Daniels v. State*, we held that a failure to move for directed verdict with specificity regarding the sufficiency issue on appeal equates to the motion never having been made; further, this is so even  when the motion is specific at the close of all the evidence but not at the close of the State's case. 2018 Ark. App. 334,

at 6, 551 S.W.3d 428, 432 (citing *Williamson v. State*, 2009 Ark. 568, 350 S.W.3d 787). Johnson did not move for a directed verdict at the close of the State's case on the basis of any element of manslaughter, and she mentioned "recklessly" in her renewed motion only at the end of all the evidence. Accordingly, any argument regarding the sufficiency of evidence to sustain a manslaughter conviction is waived.

Affirmed.

BARRETT and HIXSON, JJ., agree.

*Jimmy C. Morris, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.