Cite as 2024 Ark. App. 523

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CR-24-138

|  |  |
|---|---|
| JUSTIN H. HINES <br> APPELLANT <br><br> V. <br><br> STATE OF ARKANSAS <br> APPELLEE | Opinion Delivered October 30, 2024 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION <br> [NO. 60CR-21-1956] <br><br> HONORABLE KAREN D. WHATLEY, JUDGE <br><br> AFFIRMED |

## RITA W. GRUBER, Judge

Justin Hines appeals his jury conviction in the Pulaski County Circuit Court for manslaughter in the shooting death of Courtney Mays. Hines does not dispute that he had a loaded gun when he entered the apartment, he fired the gun three times, and the wounds caused Mays's death. Hines asserts that the shooting was justified. He contends on appeal that (1) the evidence was insufficient for conviction because the State did not negate his justification defense, and (2) the circuit court erred in permitting the State to amend the information without leave of court. We affirm.

On May 24, 2021, the State filed a felony information that charged Hines with first-degree murder committed while committing or attempting to commit aggravated residential burglary; aggravated residential burglary; a firearm enhancement; and an enhancement for committing murder in the presence of a child. On July 28, 2023, the State filed an amended

information that charged Hines with first-degree murder committed with the purpose of causing the death of another person. The aggravated-burglary charge was dropped, but the two sentencing enhancements remained.[1] The parties filed a joint motion the next day, requesting that the trial set for August 1–2 be continued to September 26–27 so that defense counsel could reassess its case due to the amended information and to resolve counsel's scheduling conflict. The circuit court granted the motion and reset the trial as requested.

In pretrial proceedings on the first day of trial, September 26, 2023, Hines asked to be tried on the State's original information. He stated that the issue was not about notice, surprise, or preparation but about following proper procedure. He argued that under Arkansas Code Annotated section 16-85-407 (Repl. 2005), the State "must seek leave of the court" in order to file a felony information. He noted that the State had not done so before amending the information. He argued that the court's permission is required particularly when the amendment "changes the nature of the crime." The prosecutor responded that "the State can amend an information up to the seating of a jury" and that the amendment in the current case "slightly" changed the nature of the charge but not its degree, which, here, was first-degree murder.

The circuit court ruled that section 16-85-407 did not apply because it "talks about the amendment of an indictment, and indictment is different from information." After a recess the court reiterated its previous ruling, noting that "while [the amendment] did change

---

[1]The court later granted Hines's directed-verdict motion on the enhancement for committing the crime in the presence of a child.

the type of murder . . . , it did not change the actual charge." The court found that there was no surprise, a continuance had been granted, and there had been adequate time for Hines to prepare. Trial proceeded to voir dire and jury selection.

The State's case included testimony by members of the Little Rock Police Department, Tiffany Howard, and expert witnesses. Howard was the only witness for the State who testified about the incident that resulted in Mays's death.

Howard testified that Mays was shot in the bedroom where Howard lived with her daughter and Christopher Hatter, who was Mays's friend and coworker. Howard rented the room from Christopher Mayo; he and other people lived in the same apartment, identified as apartment "B." She testified that she left the apartment briefly to go to the store, and when she returned, she saw Hines walking into the apartment ahead of her with his girlfriend. While Howard was in the kitchen putting up drinks, Hines and Mays were in her bedroom having a heated discussion. Howard heard Hines becoming loud and aggressive. She ran to the bedroom because her daughter was there. Mays had his hands up and was telling Hines to calm down, and Hatter was standing behind Hines. Hines reached for his gun and shot Mays, and Hatter put Hines in a headlock. The gun was fired two more times— the shots striking Mays both times, and the three men fell to the floor. Howard began wrestling with Hines, trying to get the gun from him. She tried using a Taser on him, but it failed. She "had the gun . . . and Mr. Hines had the gun," and Hatter had him in "the chokehold" the whole time.

Hines moved for a directed verdict when the State concluded its case. He questioned Howard's credibility, arguing that there was no testimony that he shot Mays "with the purpose of causing his death," and there was insufficient evidence that Hines caused Mays's death by knowing or reckless conduct—elements of the lesser-included charges of second-degree murder and manslaughter. Acknowledging that the defense had "not yet put on any testimony with regards to justification," he asked for a directed verdict on first-degree murder and the lesser-included offenses of second-degree murder or manslaughter.

The State, noting that credibility was up to the jury, argued that it had made a prima facie case for first-degree murder and had therefore made a prima facie case on the lesser-included offenses. It pointed to Howard's testimony that Hines was armed with a weapon when he entered an apartment that was not his, and he shot the victim three times. The court denied Hines's directed-verdict motion.

Hines was the only witness who testified in the case for the defense. He testified that he entered the apartment, went straight to the bedroom, said his vehicle was blocked in the parking lot, and asked Mays to move his vehicle. Hines testified that Mays acted aggressively from the outset, arguing and physically attacking him and punching him from the front; Hatter was standing behind him; and Howard was tasing him. Hines said that he raised his hands to calm the situation but reached for his gun when the others didn't calm down. He fired a first shot from beneath his hoodie, and Mays dropped to the ground. There was a wrestle for the gun, and other shots were fired.

Hines moved for a directed verdict at the close of all the evidence, first asking the court to consider arguments from his previous motion. He then addressed the defense of justification, asserting that he acted with intention but not with the purpose of causing Mays's death. He argued that his own testimony showed that he was justified, which applied to first-degree murder as well as second-degree murder and manslaughter.

The State responded that the jury heard Howard's and Hines's stories, and it was up to the jury to decide who was more believable. The circuit court denied the directed-verdict motion on the three homicide charges and the firearm enhancement and ruled that "there was enough testimony for the justification defense . . . to go to the jury." The jury was instructed on first-degree murder, second-degree murder, and manslaughter. After deliberations, the jury found Hines guilty of manslaughter.

I. *Whether the Evidence Was Insufficient to Convict Hines Because the State Did Not Negate His Justification Defense*

Hines asserts on appeal that he acted reasonably in self-defense by firing shots while being simultaneously choked by Hatter, punched by Mays, and tased by Howard. He asserts that had he not done so, he would have been killed. He argues that the State failed to present substantial evidence disproving his justification defense.

"A person may not use deadly force in self-defense if the person knows he or she can avoid the necessity of using deadly force by retreating . . . ." *Severance v. State*, 2024 Ark. App. 87, at 13, 684 S.W.3d 610, 619 (citing Ark. Code Ann. § 5-2-607(b)(1)(A) & (2) (Supp. 2019)).  However, a person is not required to retreat if the person is unable to retreat with

5

complete safety. *Id.* (citing Ark. Code Ann. § 5-2-607(b)(1)(B)(i)–(iii)). We employ the substantial-evidence standard of review when reviewing the sufficiency of the State's negation of a justification defense. *Id.* at 12, 684 S.W.3d at 618. Justification is considered an element of the offense, which, once raised, must be disproved by the prosecution beyond a reasonable doubt. *Id.* at 12, 684 S.W.3d at 619. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Kinsey v. State*, 2016 Ark. 393, at 5, 503 S.W.3d 772, 775. Evidence is viewed in the light most favorable to the State. *Id.*

Self-defense is "largely a matter of the defendant's intent and is generally a fact question for the jury." *Kauffeld v. State*, 2017 Ark. App. 440, at 9, 528 S.W.3d 302, 309. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Severance*, 2024 Ark. App. 87, at 11, 684 S.W.3d at 618. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* A presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.* The determination of Hines's intent and the credibility of the witnesses' testimony were fact questions solely within the province of the jury. *Id.*; *Kauffeld*, 2017 Ark. App. 440, at 10.

6

Viewing the evidence in the light most favorable to the verdict, we hold that sufficient evidence supports the State's negation of Hines's justification defense. Hines testified that he had a loaded gun in his waistband when he went into the apartment for the purpose of having Mays move his vehicle, which was blocking Hines's own vehicle. Howard testified that Hines became loud and aggressive while arguing with Mays, who had his hands up and was telling Hines to calm down when Hines's first shot hit him. Howard testified that while Hatter had Hines in a headlock, Hines shot Mays two more times. The jury was free to disbelieve Hines's claim that he shot Mays in self-defense because he was suddenly attacked.

II. *Whether the Circuit Court Misinterpreted Arkansas Code Annotated section 16-85-407 and Erred in Permitting the State to Amend the Information Without Leave of the Circuit Court*

We agree with the State that this issue is not preserved for our review. A defendant must object at the first opportunity in order to preserve an issue for appeal. *Lockhart v. State*, 2017 Ark. 13, at 7–8, 508 S.W.3d 869, 874. Instead of objecting when the information was amended, Hines agreed to a continuance to allow him time to prepare his case. He did not object until the day trial began. This issue is not preserved for appeal, and we will not address it.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.