

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–12–900

| | | |
|---|---|---|
| PAMELA HOOKS | | **Opinion Delivered** December 11, 2013 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION |
| V. | | [NO. CR-2010-4212] |
| STATE OF ARKANSAS | | HONORABLE LEON JOHNSON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BRANDON J. HARRISON, Judge

Pamela Hooks appeals a circuit court order that imprisoned her for forty-seven years after a jury convicted her of murdering John Davis in the second degree. We affirm the conviction because we reject Hooks's argument that the State failed to carry its burden of proof.

In October 2010, Hooks and her boyfriend, John Davis, fought physically inside an apartment they shared. Davis collapsed sometime during the fight, and Hooks called 911. When the police arrived they saw Hooks performing CPR on Davis in the kitchen. Davis was pronounced dead later the same day.

Hooks was charged with murdering Davis in the first degree. She went to trial on that charge and some lesser-included charges (second-degree murder, manslaughter, and negligent homicide). At trial, a primary issue was Davis's poor heart health. The forensic pathologist who performed the autopsy, Dr. Charles Kokes, testified that Davis had several

SLIP OPINION

preexisting heart conditions, including a main artery that was 90% blocked. Dr. Kokes testified that Davis died of a heart attack that was caused by the stress and physical exertion brought on by his fight with Hooks. Dr. Kokes told the jury that Davis incurred sixty-eight separate injuries—including cuts, scratches, scrapes, and "superficial" stab wounds—to his arms, hands, face, and head. Some of those injuries were consistent with defensive wounds. Dr. Kokes also testified that none of Davis's injuries were life-threatening. "[Y]ou take a healthy individual and inflict the same type of injuries on them, at most, you're probably looking at a trip to the emergency room and some stitches but they would otherwise be alright." The official cause of death was "complications of cardiac arrest due to physical struggle, multiple superficial injuries and arterial sclerotic cardiovascular disease." Dr. Kokes classified Davis's death as a homicide.

The State alleged that Hooks murdered Davis by cutting him with scissors, which caused an increase in Davis's heart rate and blood pressure and resulted in his death. According to the State Crime Lab's tests, scissors that were recovered from the apartment were stained with Hooks's and Davis's blood.

Without objection, the jury also heard about the couple's prior troubles. Police officer John Alberson testified during the trial that he arrested Hooks in 2008 after he found Davis with several lacerations on his head and his nose hanging off his face. Officer Alberson said that Hooks told him when he arrested her that "she was attempting to kill [Davis] and if she didn't do it, she was going to have somebody do it for her." Hooks testified too, admitting that she had pled guilty to first-degree battery for the 2008 incident that Officer Alberson described. She also described to the jury the events surrounding

SLIP OPINION

Davis's death. Hooks said that, before he died, Davis hit her in the back of the head with a skillet and then held her around her neck. She said that Davis's injuries were caused by her grabbing some broken glass and a piece of broken plate and "hitting him blindly" as she tried to free herself. According to Hooks, Davis suddenly stopped fighting and collapsed. When he didn't get up, Hooks called 911 and tried to resuscitate him. Hooks testified that nobody, including herself, knew that Davis, who was sixty years old when he died, had coronary-artery disease. The State offered no evidence that either Hooks or Davis knew about his heart condition.

Hooks also testified about her personal relationship with Davis. She told the jury that she called him "Daddy" and they had an open sexual relationship that sometimes turned violent. Hooks said that she and Davis were fighting over her involvement with another man the day Davis died.

At trial, Hooks moved for a directed verdict on the first-degree murder charge and the lesser-included charges. The circuit court granted her motion on the first-degree-murder charge. The court denied the rest of her motions and instructed the jury on second-degree murder, manslaughter, negligent homicide, and the self defense of justification. The jury found Hooks guilty of committing second-degree murder after receiving this instruction:

> The State must have proved beyond a reasonable doubt that Hooks, with the purpose of causing serious physical injury to John Davis, caused the death of John Davis.
>
> A person acts purposely with respect to his conduct or the result of his conduct when it is his "conscious object to engage in conduct of that nature or to cause the result."



Serious physical injury is a "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ."

Our supreme court has stated that a person commits second-degree murder in either of two ways. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007). A person commits this crime if she "[k]nowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-103(a)(1) (Repl. 2006). The second way to commit the crime is when a person, "[w]ith the purpose of causing serious physical injury to another person . . . causes the death of any person." Ark. Code Ann. § 5-10-103(a)(2) (Repl. 2006). In this case, the jury was instructed on the second way to commit second-degree murder.

Hooks's point on appeal is that the circuit court erred in denying her directed-verdict motion on the second-degree murder charge because the State failed to place substantial evidence before the jury that Hooks acted with the purpose of causing Davis serious physical injury. Hooks thus challenges the sufficiency of the State's proof on the mental-state element of Ark. Code Ann. § 5-10-103(a)(2).

Motions for a directed verdict are challenges to the sufficiency of the evidence. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). In reviewing Hooks's challenge, we ask whether the verdict is supported by substantial evidence; the evidence may be direct, circumstantial, or some combination of the two. *Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007). For circumstantial evidence to be substantial, it must exclude every reasonable hypothesis other than the accused's guilt. The jury decides whether the circumstantial evidence excludes every hypothesis consistent with innocence. Substantial

SLIP OPINION

evidence forces or compels a conclusion one way or the other so that the jury does not have to speculate to reach a decision. We will not overturn its determination unless the jury had to speculate to reach the verdict it did. The jury also weighs the evidence and judges witness credibility. *Id.*

A criminal defendant's state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363 (2001). A person is presumed to intend the natural and probable consequences of her actions. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). Intent also can be inferred from the type of weapon used, the manner of use, and the nature, extent, and location of the trauma suffered by the victim. *Wyles v. State*, 368 Ark. 646, 651, 249 S.W.3d 782, 786 (2007). The existence of criminal intent or purpose is a matter for the jury to determine when criminal intent may be reasonably inferred from the evidence. *McClard v. State*, 2012 Ark. App. 573.

As we have pointed out, Hooks's directed-verdict motions limit her sufficiency challenge to one element of second-degree murder: intent. The State's argument is likewise limited because it prosecuted her solely under the bodily-injury section of the statute.

The State asks us to interpret Ark. Code Ann. § 5-10-103(a)(2) to mean that it does not have to prove that Hooks actually inflicted serious physical injury. The only mental state it must prove for second-degree murder, the State contends, is that Hooks had the purpose to cause serious physical injury, not that she actually caused a serious physical injury. (Recall Dr. Kokes's testimony that all of Davis's cuts, scrapes, and stab

SLIP OPINION

wounds would not have alone killed him and many would not have even required stitches.) Hooks argues the evidence cannot support the conviction because the State failed to prove that the injuries she inflicted were serious physical injuries and that it failed to prove the mental state required for second-degree murder.

We return to the statute, which reads: "A person commits murder in the second degree if . . . with the purpose of causing serious physical injury to another person, the person causes the death of any person." Ark. Code Ann. § 5-10-103(a)(2) (Repl. 2006). Our supreme court has differentiated between first-degree and second-degree murder by emphasizing that first-degree murder requires a person to act with the purpose of causing the death of another person. But second-degree murder requires a lesser mental state—the person must only act with the purpose of causing serious physical injury. *Reynolds v. State*, 341 Ark. 387, 391, 18 S.W.3d 331, 333 (2000). So according to the controlling caselaw, Hooks did not have to intend to kill Davis for the jury to convict her of second-degree murder. Instead, a second-degree, bodily injury type murder requires Hooks to have acted with the conscious objective to cause something more than a plain "bodily injury" but something less than death. Consequently, if substantial evidence supports the jury's decision that Hooks intended to seriously injure Davis, though not to kill him, then she could be found guilty of second-degree murder and we must affirm.

We agree with the State that the statute does not, by its express terms, require that it prove Hooks actually inflicted serious physical injuries. Yet Hooks's argument has traction because most of our caselaw addressing second-degree murder involved far more serious injuries than the "superficial" (albeit numerous) wounds Hooks inflicted. In *Wyles*

*v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007), for example, our supreme court upheld a second-degree-murder conviction for serious physical injury. But there the evidence showed that a wife had sustained several serious injuries—multiple rib fractures, a jaw fracture, and a punctured lung—that were inflicted using a considerable amount of force. In another case, a jury convicted a defendant of second-degree bodily-injury murder, which the supreme court upheld, when the evidence showed that the victim died from repeated blows to the head. *Anderson v. State*, 312 Ark. 606, 852 S.W.2d 309 (1993). And in *Johnson v. State*, 2010 Ark. App. 153, 375 S.W.3d 12, a jury convicted a wife of second-degree murder when she calmly watched her husband bleed to death after shooting him in the wrist. Another case involved a victim who died from a severe stab wound to the arm. *Edwards v. State*, 40 Ark. App. 114, 842 S.W.2d 459 (1992).

Having considered the record as a whole and the caselaw applying the applicable murder statute, we hold that substantial evidence supports the jury's finding that Hooks acted with the purpose to seriously injure Davis. As we stated earlier, a jury may infer criminal intent in light of the surrounding circumstances, including the use of a deadly weapon, the manner in which the weapon was used, and whether it was calculated to cause serious bodily injury. *Wyles*, *supra*. And here, the jury could have reasonably inferred that Hooks intended to seriously injure Davis because she used scissors, an instrument that may be a deadly weapon. *See Johnson v. State*, 326 Ark. 3, 929 S.W.2d 707 (1996) (holding that scissors, when used to stab someone, were a deadly weapon). The cumulative number of injuries (sixty-eight) gives rise to the inference that she intended serious harm. Some of those injuries were defensive wounds. Most of the

SLIP OPINION

injuries were inflicted to vital parts of Davis's body, his face and head. And had Davis lived, these injuries may have caused scarring or permanent disfigurement, or at least the jury could have so inferred from the photographs and testimony received during the trial.

We are also mindful that the jury was not required to believe Hooks's side of the story. *Thomas v. State*, 266 Ark. 162, 583 S.W.2d 32 (1979). Indeed, the jury apparently did not because it rejected the lesser charges and her affirmative defense of justification. Also ripe for the jury's consideration and weighing was Officer Alberson's testimony that Hooks told him that she had wanted to kill Davis. Hooks also told the jury that she was in love with another man and that she had seriously injured Davis with scissors before.

Affirmed.

GLOVER and PITTMAN, JJ., agree.

*James Phillips* and *Elizabeth Borders*, Deputy Public Defenders, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.