Cite as 2025 Ark. App. 38

# ARKANSAS COURT OF APPEALS
DIVISION I
№ CR-24-167

| | | |
|---|---|---|
| STANLEY MAINA | | Opinion Delivered January 29, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION |
| V. | | |
| | | [NO. 60CR-21-2902] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE KAREN D. WHATLEY, JUDGE |
| | | AFFIRMED |

**BART F. VIRDEN, Judge**

Stanley Maina appeals his conviction by a Pulaski County Circuit Court jury of aggravated residential burglary and aggravated assault. We affirm.

I. *Relevant Facts*

On September 21, 2021, Mania was charge by an amended felony information with aggravated residential burglary, first-degree domestic battering, aggravated assault, and violation of an order of protection. On August 8, 2023, his trial was held. At the trial, Tabitha Kamau testified that Maina is her ex-husband, and they had lived in the apartment together from September 2018 until they separated on June 20, 2021, after Maina's drinking had strained the marriage. On June 24, Maina returned to the apartment, but Kamau would not let him inside. On June 27, she received a call from Maina's mother, and on the basis of

that conversation, she obtained a temporary order of protection against Maina. Kamau testified that she told Maina the sheriff would serve him with the order. After receiving the order of protection on June 29, Kamau returned to the apartment and saw Maina in the parking lot. She called the sheriff's office and asked for the order of protection to be served on him there. The next day, around 10:30 a.m., Kamau met her friend, Queen Kibwana, for tea at the apartment. While they were chatting at the dining table, they noticed Maina sitting on the balcony. Maina entered the apartment through the window and threw the protective order in Kamau's face and said, "What is this?" Maina slapped Kamau's face and pushed her toward the stove and then to the kitchen counter. Holding Kamau down, Maina reached over her to the top of the refrigerator where the knife block was kept. Kamau grabbed the knife block first and threw it toward the living room. She told Kibwana to get the knives and "put them out." Maina ran toward the knives, and Kibwana ran back to Kamau. Kamau testified that she was afraid that Maina was going to attack Kibwana because he grabbed a knife and ran toward her. Kamau picked up a dining chair and shielded Kibwana from him. Kamau testified that as she was shielding her friend with the chair, Maina stabbed her [Kamau] shoulder, pulled the blade out, and stabbed her again on or near the back of her right arm. Kibwana struck his hand with a lamp, and he dropped the knife. Kamau pushed him with the chair toward the couch and then the wall while Kibwana unsuccessfully tried to unlock the door. Kamau grabbed a knife that was near Maina, and she unlocked the door. As they left, Kamau called 911. Neighbors responded to the women's screams for help, and

2

Kibwana applied pressure to Kamau's wounds until the ambulance arrived. Kamau testified that she has scars from both wounds and weakness and limited movement in her arms.

Officer Juan Velez with the Little Rock Police Department testified that on June 29, he served Maina with the order of protection and explained its contents to him, including that he was not allowed to be at the apartment or contact Kamau in any way.

Kibwana testified that when Maina entered the apartment through the window, he threw the order of protection in Kamau's face and angrily asked, "What is this?" Kibwana stated that Maina told her, "You, get out of here." Maina then punched Kamau's face, pushed her toward the kitchen, and grabbed a knife from the block on top of the refrigerator. Kibwana ran to the window and screamed for help, calling out, "Help me. Someone is trying to kill us." Kamau then told Kibwana to hide the knives and threw the block, though Kibwana could not remember exactly where Kamau threw it. At that point, Maina stabbed Kamau, and Kibwana saw blood on Kamau's shoulder. Maina pushed Kamau toward the dining table and "was coming after [Kibwana] with a knife." Kamau grabbed a dining chair, "held [it] towards [Kibwana] and then held the chair against Maina's chest and pushed him toward the wall." Kibwana stated that she grabbed the lamp and hit Maina's hand with it. Maina dropped the knife, and she and Kamau were able to escape.

Maina moved for a directed verdict regarding the aggravated-residential-burglary charge, arguing that the State failed to present sufficient evidence that he entered the apartment intending to commit domestic battery or that he intended to cause serious physical injury or death to Kamau. Maina also contended that there was no evidence that he

committed aggravated assault on Kibwana because there was no testimony that he touched her at all. He pointed out an inconsistency in the women's testimony, arguing that Kibwana testified that he was holding a knife when he went toward her, but Kamau had not stated that he had knife in his hand until after he ran in Kibwana's direction. At the close of all the evidence, Maina renewed his motion for directed verdict, which was again denied. The jury returned guilty verdicts on all charges, and Maina was sentenced to an aggregate term of thirty-six years' incarceration in the Arkansas Division of Correction.

Maina timely filed his notice of appeal, and this appeal followed.

## II. *Discussion*

### A. Standard of Review

Motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Burmingham v. State*, 342 Ark. 95, 27 S.W.3d 351 (2000). In a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State and consider only the evidence that supports the conviction. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). The appellate courts determine whether the evidence was substantial. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007). Evidence is sufficient if it is of such character and force that it, with reasonable certainty, compels a conclusion one way or the other without resort to speculation or conjecture. *Id.* The credibility of witnesses is an issue for the jury. *Kinsey v. State*, 2016 Ark. 393, 503 S.W.3d 772. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

4

1. *Aggravated residential burglary*

Maina argues that the State did not present sufficient evidence that he had the requisite intent to commit domestic battery when he entered the apartment. His argument is not well taken.[1]

A person commits aggravated residential burglary if he or she commits residential burglary, as defined in section 5-39-201, of a residential occupiable structure occupied by any person, and he or she (1) is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon; or (2) inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-39-204(a) (Supp. 2023). A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Supp. 2023). Serious physical injury is defined as a physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102(21) (Supp. 2023).

---

[1]For clarification of his point on appeal, we note that Maina concedes in his brief that he committed residential burglary by violating the protective order, stating that "[i]t was clear from the evidence that Appellant had been served with an order of protection and was neither invited to nor had permission to be at the home of the alleged victim." Instead, Maina focuses on the aggravated-residential-battery statutory requirement that he had the intent to cause serious physical injury or death, which is addressed in our discussion of the jury's decision that Maina had the intent to commit domestic battery when he entered the apartment.

A criminal defendant's state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances. *Hooks v. State*, 2013 Ark. App. 728, at 5, 431 S.W.3d 333, 335. A person is presumed to intend the natural and probable consequences of his or her actions. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). Intent also can be inferred from the type of weapon used, the manner of use, and the nature, extent, and location of the trauma suffered by the victim. *Wyles*, *supra*. The existence of criminal intent or purpose is a matter for the jury to determine when criminal intent may be reasonably inferred from the evidence. *Hooks*, *supra*. The fact-finder does not view each fact in isolation but rather may consider the evidence as a whole. *Harjo v. State*, 2017 Ark. App. 337, 522 S.W.3d 839. The facts proved incident to an unlawful entry must show circumstances of such probative force as to reasonably warrant the inference of the purpose on the part of the accused to commit the underlying crime, other than the entry itself. *Id.*

Maina contends the instant case is analogous to *Whitworth v. State*, 2017 Ark. App. 462, at 1, 531 S.W.3d 407, 409; however, *Whitworth* is distinguishable. In *Whitworth*, the appellant was either climbing in or out of a window of his ex-girlfriend's house when the woman's daughter, who was in the home, saw him and screamed. At the time, Whitworth was carrying a small bag, about six inches long. He was charged with residential burglary, and the State alleged that he intended to commit theft of property when he entered the home. This court held that the facts did not support his conviction for residential burglary because there was no evidence that he had the intent to deprive anyone of his or her property. In the instant case, from the evidence discussed above, the jury did not have to resort to speculation

6

or conjecture to determine that the purpose of Maina's illegal entry into the home was to commit domestic battery. The State presented evidence that Kamau obtained the protective order after a discussion with Maina's mother, and Kamau became worried for her safety. Officer Velez testified that he explained the terms of the protective order to Maina the day before the attack. In light of this evidence, the jury could have reasonably inferred that when Maina illegally entered the apartment and threw the protective order in Kamau's face, asking her, "What is this?," he was not merely seeking information, as he contends. Moreover, the State presented evidence that Maina had lived in the apartment, he knew where the knives were kept, and he proceeded toward the knives immediately after he had struck and pushed Kamau. Eventually, Maina was able to grab a knife and stab Kumau twice, seriously injuring her. Substantial evidence supports the jury's conclusion that Maina entered the apartment intending to commit domestic battery, and we affirm his conviction for aggravated residential burglary.

## 2. Aggravated assault

Maina also argues that the evidence was insufficient to prove that he created a substantial danger of death or serious physical injury to Kibwana because there was no evidence that he "actually went toward Kibwana with a knife or engaged in any conduct that created any danger to Kibwana." His argument is not well taken.

A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann.

7

§ 5-13-204(a)(1) (Supp. 2023). A person acts purposely when it is his conscious object to engage in conduct of that nature or to cause such a result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). As discussed above, intent "may be inferred from the facts and circumstances shown in evidence." *Stuart v. State*, 2020 Ark. App. 131, at 4, 596 S.W.3d 552, 554. The aggravated-assault statute does not require that a weapon actually be used or that the victim actually fear for his or her safety but requires a "substantial danger of death or injury to another person." *Id.* (quoting *Schwede v. State*, 49 Ark. App. 87, 89, 896 S.W.2d 454, 455 (1995)).

Maina argues that the evidence proves that he never wielded a knife toward Kibwana or made any verbal threats to her, and Kamau's testimony that he obtained a knife *after* she threw the block across the room outweighs Kibwana's testimony that he had a knife in his hand when he ran toward her. Maina contends that this court should interpret the testimony to mean that he was running toward the knife block, not Kibwana, and she was able to move away from him. We hold that substantial evidence supports the jury's conclusion. *See Wyles*, *supra*.

Kibwana stated that Maina ran toward her wielding a knife, and he had already stabbed Kamau once; thus, the jury could have reasonably inferred that he ran toward Kibwana with a knife in hand intending to cause her serious injury or death. Maina likens the instant case to *Swaim v. State*, 78 Ark. App. 176, 79 S.W.3d 853 (2002), claiming that "merely holding a knife did not create a substantial risk of death or serious physical injury to Kibwana, especially considering none of his actions were directed towards Kibwana."

8

*Swaim* is distinguishable. In *Swaim*, this court reversed Swaim's conviction of aggravated assault against a police officer because, although Swaim was holding a gun, he did not threaten or point it at anyone. Here, there was testimony Maina was not simply holding a knife. He hit Kamau, stabbed her, and ran toward Kibwana with the knife. The jury was free to believe all or part of Kamau's and Kibwana's testimony and may resolve any conflicts or inconsistencies in their testimony. *See Kinsey*, *supra*. The facts and circumstances in evidence support the jury's conclusion that Maina consciously engaged in conduct that placed Kibwana in danger of death or serious injury. *See Stuart*, *supra*. Accordingly, we affirm.

Affirmed.

KLAPPENBACH, C.J., and HARRISON, J., agree.

*Law Offices of John Wesley Hall*, by: *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen.; and *Michael Frost*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the Supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.