Cite as 2025 Ark. App. 168

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-22-809

| | |
|---|---|
| MICHAEL SHANE STOELTING<br>APPELLANT | Opinion Delivered March 12, 2025 |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-19-2969] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE BRAD KARREN, JUDGE |
| | AFFIRMED |

## MIKE MURPHY, Judge

A Benton County jury convicted appellant Michael Stoelting of rape of a minor child (M.C.) and sentenced him to ten years' imprisonment. On appeal, Stoelting argues that sufficient evidence does not support the conviction. We affirm.

In December 2019, police received a report that Stoelting engaged in deviate sexual activity with M.C. both before and after he was appointed M.C.'s legal guardian. M.C. confided in his school counselor, and she reported it to the Arkansas State Child Abuse Hotline. When officers met with M.C., he disclosed that Stoelting had performed oral sex on him while the two were living together. The State charged Stoelting by criminal information with having committed the crime of rape in violation of Arkansas Code Annotated section 5-14-103(a)(4)(A)(i) (Repl. 2024).

A jury trial was conducted on May 17–19, 2022.  J.C. Wiseman, a former Bentonville Police Officer testified that he took a child-abuse-hotline assignment involving this case. Wiseman stated that M.C. met Stoelting on Grindr, a dating application serving LGBTQ individuals. Wiseman testified that Stoelting and M.C. had two sexual encounters—one shortly after they met and one shortly after M.C. told Stoelting that "they shouldn't be having sex anymore." Wiseman stated that the last sexual encounter happened approximately five months before the hotline call, around July 2019.

Detective Sergeant Josh Woodhams with the Bentonville Police Department testified regarding digital forensics performed on M.C.'s and Stoelting's cellular and computer devices. He was able to retrieve over five thousand messages between M.C. and Stoelting. The State introduced without objection a printout of the messages with a certified transcription—they were originally in Spanish and had to be translated. Woodhams testified that the admitted messages were exchanged between July 20 and 22, 2019. On July 22, M.C. texted Stoelting, "[S]leeping with a man is a sin and well, I never should have done it." Stoelting then replied, "I have been feeling very bad because of what we did last week and then again on Saturday. I feel that was very bad for me to do with you. I hope that you know I am truly sorry. I will never do that again with you." He also texted that same day, "A father should never do those things with his son."  Woodhams also testified that he found documents on Stoelting's computed that revealed Stoelting is M.C.'s guardian. Those documents were dated September 2019.

Lieutenant Keith Lawson with the Cave Springs Police Department testified that he was involved in the investigation and interviewed Stoelting. Stoelting told Lawson that M.C. reached out to him through Grindr. M.C. was living in Siloam Springs at the time, so Stoelting visited him there. Lawson testified that Stoelting said he and M.C. had oral sex the first time they met. M.C. had initially told Stoelting that he was nineteen years old, but shortly after the initial sexual contact, M.C. admitted to Stoelting that he was sixteen. According to Lawson, Stoelting acknowledged that he discussed marriage or adoption with M.C. so that M.C. would not be deported.[1]

M.C. testified that he was nineteen at the time of the trial. He stated that he met Stoelting on Grindr and was living with co-workers in Siloam Springs at the time. M.C. testified that he was sixteen when he met Stoelting but that he claimed to be older. Stoelting told M.C. he was twenty-eight but then later he told him he was forty. M.C. testified that after the two met on Grindr, Stoelting came to Siloam Springs. About a month after they met, M.C. said the two moved in together in Cave Springs. About two and a half months later, the two moved to Bentonville.

M.C. testified that at some point shortly after they began living together, Stoelting became his legal guardian in a court proceeding. M.C. did not remember exactly when the guardianship took place, but he recalled going to school that day and that school had been in session for only a week or two. M.C. acknowledged signing a petition for guardianship on

---

[1]M.C. fled Guatemala, where the rest of his family lived, and came to the United States in 2018.

July 30, 2019; the petition was file marked August 15, 2019. The petition was admitted into evidence. M.C. testified that he and Stoelting had three sexual interactions—once before the guardianship and twice after. The first time was in Siloam Springs shortly after they met on Grindr, and the second and third times were within a week of each other after they had moved in together. M.C. testified that both times Stoelting touched his "front part"—meaning penis—with his hands and mouth in the home in Cave Springs.

Once the State rested, Stoelting moved for directed verdict, arguing that there was insufficient proof that he was M.C.'s guardian at the time of the alleged rape. The court denied the motion, acknowledging that M.C.'s timeline was inconsistent and contradictory at times but ultimately concluding that the issue went to M.C.'s credibility, an issue for the jury to decide. Stoelting did not testify, and the defense rested. Stoelting renewed his motion for directed verdict, and the court again denied it. The jury determined Stoelting was guilty and sentenced him to ten years' imprisonment. This appeal follows.

Motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Maina v. State*, 2025 Ark. App. 38, at 4, 704 S.W.3d 364, 367. In a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State and consider only the evidence that supports the conviction. *Id.* The appellate courts determine whether the evidence was substantial. *Id.* Evidence is sufficient if it is of such character and force that it, with reasonable certainty, compels a conclusion one way or the other without resort to speculation or conjecture. *Id.* The credibility of witnesses is an issue for the jury. *Kinsey v. State*, 2016 Ark. 393, 503 S.W.3d 772. The trier of fact is free to believe

all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Stoelting was charged with violating Arkansas Code Annotated section 5-14-103(a)(4)(A)(i), which prohibits sexual intercourse or deviate sexual activity with a person who is a minor when the actor is the victim's guardian. Stoelting contends the State failed to provide sufficient evidence that he was the victim's guardian at the time of the alleged act. The term "guardian" includes any person who, by virtue of a living arrangement, is placed in an apparent position of power or authority over a minor. Ark. Code Ann. § 5-14-101(4). "Deviate sexual activity" means, in part, any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person. Ark. Code Ann. § 5-14-101(1)(A) (Repl. 2024). This court has consistently held that the testimony of a rape victim, standing alone, is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *Mabry v. State*, 2020 Ark. 72, at 6, 594 S.W.3d 39, 44.

It is undisputed that M.C. was a minor and that he and Stoelting engaged in deviate sexual activity: the only issue is whether the evidence sufficiently established that Stoelting was M.C.'s guardian. Stoelting argues that M.C. testified inconsistently regarding when the sexual encounters occurred.

The State presented substantial evidence that Stoelting was in a position of power or authority when he raped M.C. M.C. testified that Stoelting twice performed oral sex on him after they had moved in together and after Stoelting had become his guardian. As it was

entitled to do, the jury reasonably credited M.C.'s testimony regarding these acts and when they occurred. Moreover, the petition for guardianship stated that M.C. had been in the care and custody of Stoelting since July 17, 2019. In the July 22 text messages, Stoelting acknowledges two sexual interactions: "I feel bad because of what we did last week and again on Saturday." July 22, 2019, fell on a Monday, so the previous Saturday would have been July 20—after M.C. was admittedly in Stoelting's care and custody. It was not unreasonable for the jury to conclude that Stoelting was in a position of power or authority over M.C.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.